# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| **ALTON R. GRIGGS, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **YUSEF BRINSON,** | ) | |
| | ) | |
| **Plaintiff-Intervenor,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:16-CV-406-ALB-SMD** |
| | ) | |
| **KENWORTH OF MONTGOMERY, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Kenworth of Montgomery, Inc.'s ("Kenworth") Motion to Compel Arbitration (Doc. 26) and Motion to Compel Intervenor Yusef Brinson's Claims to Arbitration (Doc. 52), which have been reopened pursuant to remand from the United States Court of Appeals for the Eleventh Circuit (Doc. 132), and Kenworth's Renewed Motion to Compel Plaintiff's Claims and Intervenor's Claims to Arbitration. (Doc. 133). Upon consideration of Kenworth's motions, Plaintiffs' responses, and the evidentiary material in support of and in opposition to the motions, Kenworth's motions are **GRANTED.**

# BACKGROUND

This case arises out of a 2015 tractor-trailer accident in Jackson County, Alabama. Plaintiff Alton R. Griggs Jr., a commercial truckdriver, was driving the tractor-trailer (the "truck") when the truck allegedly lost power and the engine shut down, causing Griggs to lose control of the truck and the truck to overturn and crash. One passenger was in the truck at the time of the accident, Plaintiff-Intervenor Yusef Brinson, and both Griggs and Brinson were injured as a result of the accident.

About one month before the accident, A.K.G. Freight Carriers, LLC ("A.K.G.") purchased the truck under warranty from Arrow Truck Sales, Inc., ("Arrow") in Conyers, Georgia. Griggs and his wife, Kimberly Newson, are the only members of A.K.G. On March 3, 2015, Griggs was driving the truck in Selma, Alabama, when the truck allegedly experienced a sudden mechanical/electrical failure, causing it to lose power. Griggs claims that Arrow instructed him to have the truck towed to Kenworth's repair facility in Montgomery, Alabama, and that Arrow managed and participated in "all testing, test interpretation[,] and repair decision making" related to the truck after it arrived at Kenworth's facility. (Doc. 136 at 3).

Multiple repairs related to the truck's Electronic Control Module ("ECM") were completed by Kenworth over the course of the next several days. On March 4, 2015, Kenworth attempted to fix the power loss issue by tightening a loose connection to the ECM, which proved unsuccessful after the engine shut down

during a test drive. On March 5, 2015, Kenworth replaced the battery cable, which also proved unsuccessful after the engine again shut down during a test drive. Finally, that same day, Kenworth removed and replaced the ECM—a repair Griggs alleges was authorized and directed by Arrow. On March 6, 2015, after the truck was returned to Griggs, Griggs was driving the truck when it again lost power, allegedly causing the accident that now forms the basis of this lawsuit.

Kenworth issued three separate repair orders and invoices for the repairs it performed on the truck, all of which contained the same arbitration provision:

4. Arbitration.

Any controversy or claim arising out of or relating to this Invoice or otherwise relating in any fashion to the purchase or sale of equipment, parts or service thereon shall be submitted to arbitration in the county in which the dealership is located in accordance with the rules of the American Arbitration Association. Judgment upon any award rendered in such proceedings may be entered in any court having jurisdiction thereof, and the parties hereto submit to the jurisdiction of all state and federal courts having venue in the county in which the dealership is located.

(Docs. 133-1 at 6, 26-4 at 2, 26-5 at 2, and 26-6 at 4).

Griggs signed his individual name on the repair orders for the first two repairs and on the invoice for the third repair, though each repair order and invoice has a "Sold To" and "Ship To" section identifying A.K.G. as the customer. For the first repair, Arrow paid $189.75, and Griggs paid $214.29 with his personal Visa card. For the second repair, Griggs paid the entire repair cost—$429.64—with his

3

personal Visa card. For the last repair, Kenworth sent Arrow a quote for approval, and Arrow paid $1,936.61. Brinson neither signed nor paid any of the repair orders or invoices.

## PROCEDURAL HISTORY

On June 1, 2016, Griggs filed this action against Arrow and Kenworth, asserting (1) negligence, breach of express and implied warranties, and negligent misrepresentation/fraud claims against Arrow and (2) negligence and negligent misrepresentation/fraud claims against Kenworth. Generally, Griggs claims that the truck had "an electrical system defect that the Defendants, at various times and despite numerous opportunities, failed to repair." (Doc. 136 at 5). With respect to Kenworth, Griggs specifically asserts the following allegations in his Complaint:

> 20. After the replacement of the ECM, the subject tractor was returned to **GRIGGS** with the assurance that the repairs that had been performed would end the tractor's power loss and engine shut down problems. . . .
>
> 64. Defendant **KENWORTH** acted negligently and/or wantonly in failing to effectuate and confirm all necessary repairs had been performed, prior to relinquishing possession of the tractor to **GRIGGS**. . . .
>
> 65. Defendant **KENWORTH** acted negligently and/or wantonly in representing to **GRIGGS** that the subject tractor's performance problems had been corrected, prior to relinquishing possession to **GRIGGS**. . . .
>
> 74. Defendant **KENWORTH** falsely represented to Plaintiff that it had inspected and tested the subject tractor sufficiently to identify the cause of any major defects and corrected them. Defendant Kenworth also falsely represented that the subject tractor was fully repaired and safe

to be driven. The representations made by the Defendant **KENWORTH** were, in fact, false. The true facts were that the inspection and testing performed were not adequate to ascertain the cause of what was an intermittent problem with the electrical/mechanical systems, that the tractor had not been fully repaired and was not safe and that it would be dangerous for the Plaintiff and others to drive the subject tractor until the cause of the power loss and engine cut off and the effectiveness of the repairs were conclusively tested and confirmed.

(Doc. 1, ¶¶ 20, 64-65, 74).

On August 25, 2016, Brinson filed a motion to intervene (Docs. 38 and 44), which was granted. (Doc. 46). Like Griggs, Brinson asserts negligence claims against both Arrow and Kenworth.[1] (Doc. 50). With respect to Kenworth, Brinson claims that Kenworth acted negligently and/or wantonly "in failing to adequately evaluate, investigate and confirm the cause of the subject tractor's performance problems," "in failing to confirm all necessary repairs had been performed," and "in failing to perform proper testing to ascertain the true cause of the performance failure and confirm that they had been remedied." (Doc. 50, ¶¶ 23-24, 27).

Kenworth moved to compel arbitration of Griggs's and Brinson's claims under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), based on the arbitration provision contained in the repair orders and/or invoices. (Docs. 26 and 52). On September 22, 2017, the district court denied Kenworth's motions to compel

---

[1] Griggs's and Brinson's claims against Arrow were transferred to the Northern District of Georgia (Doc. 128), leaving only their claims against Kenworth before this Court.

arbitration "without prejudice and with leave to reinstate" following resolution of a separate pending motion filed by Arrow. (Doc. 97). Kenworth timely filed an interlocutory appeal in the Eleventh Circuit, arguing that the district court erred in denying its motions to compel arbitration. (Doc. 105). On appeal, the Eleventh Circuit determined that it could not conduct "meaningful appellate review" of Kenworth's motions based on the "summary nature of the district court's order and the current state of the record," and thus the court vacated the district court's decision and remanded the case "for the court below to enter a reasoned opinion analyzing the motions to compel arbitration." (Doc. 132). Kenworth subsequently filed a renewed motion to compel arbitration of Griggs's and Brinson's claims (Doc. 133), and the Court held a telephone hearing on the motions on August 28, 2019. *See* Dkt. Entry 139.

## DISCUSSION

The FAA creates a presumption of arbitrability as to valid, enforceable arbitration agreements so long as the agreement is connected with a transaction involving interstate commerce.[2] *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016); *see Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (recognizing that the FAA "establishes a national policy favoring arbitration when

---

[2] Based on their briefing, Plaintiffs do not dispute that the repair orders and/or invoices satisfy the FAA's requirement that the contract containing the arbitration agreement involve interstate commerce.

the parties contract for that mode of dispute resolution"). But "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore*, 827 F.3d at 1329. In other words, the presumption applies to the scope of an arbitration agreement, not to whether the agreement exists. *See id.*

To decide a motion to compel arbitration under the FAA, the Eleventh Circuit has adopted a two-step inquiry. *Klay v. All Defendants*, 389 F.3d 1191, 1201 (11th Cir. 2004). First, courts must determine whether the parties agreed to arbitrate. Whether an individual is a party to the arbitration agreement is "embedded within" this inquiry. *Coscarelli v. ESquared Hospitality LLC*, 364 F. Supp. 3d 207, 215 (S.D.N.Y. 2019). Second, courts must determine whether "legal constraints external to the parties' agreement foreclosed arbitration." *Klay*, 389 F.3d at 1201. The dispute in this case centers solely on the first step of the inquiry.

Because arbitration is a matter of contract, courts apply state law principles governing the formation of contracts to determine whether an enforceable arbitration agreement exists between the parties. *Bazemore*, 827 F.3d at 1329-30; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005). To establish the formation of a contract under Alabama law, the party seeking to enforce the contract must show by a preponderance of the evidence (1) an offer, (2) an acceptance, (3) consideration, and (4) mutual assent to the essential terms of the contract. *Burch v.*

*P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)).

The Eleventh Circuit applies a "summary judgment-like standard" to decide a motion to compel arbitration. *Bazemore*, 827 F.3d at 1333. That is, a district court may decide as a matter of law whether the parties entered into an arbitration agreement if "there is no genuine dispute as to any material fact" concerning the formation of the agreement. *Id.* If a genuine dispute exists as to whether the parties entered into an arbitration agreement, the court must proceed summarily to trial on that issue. *Id.*; *Burch*, 861 F.3d at 1346 (citing 9 U.S.C. § 4).

**A. Griggs's Claims**

Kenworth argues that Griggs's claims are subject to arbitration because Griggs is either a signatory to a valid, enforceable arbitration agreement between Griggs and Kenworth, or alternatively, he is a non-signatory who is treated as a third-party beneficiary to the arbitration agreement and is thus equitably estopped from avoiding arbitration. Griggs argues that he is neither a signatory in his individual capacity nor a third-party beneficiary to the arbitration agreement, and thus his claims cannot be compelled to arbitration.

1. Whether Griggs is a Party to the Contract

During the August 28, 2019 motions hearing, the parties agreed that the Court must first determine whether the contract containing the arbitration provision—in

this case, the repair orders and/or invoices—is ambiguous as to whether Griggs is a party to the contract, *i.e.*, whether Griggs signed the contract in his individual or representative capacity. Kenworth argued at the hearing that the contract unambiguously has three parties: Griggs, A.K.G., and Kenworth. But, under this interpretation, who signed for A.K.G.? It would have to be Griggs. So Kenworth concedes that Griggs signed in his representative capacity: the only issue is whether he *also* signed in his individual capacity. And that is where the contract is, at the very least, ambiguous.

To determine in which capacity a party signed a contract, Alabama courts "look to the consistency between the body of the contract and the signature block." *David v. Shah*, 426 F. App'x 725, 747-48 (11th Cir. 2011) (quoting *Marriott Int'l, Inc. v. deCelle*, 722 So. 2d 760, 762 (1998)). "[A] signature block is unquestionably probative of the capacity in which a person is acting when he or she signs an agreement, but it is not dispositive." *Berliner Corcoran & Rowe LLP v. Orian*, 563 F. Supp. 2d 250, 254 (D.D.C. 2008); 17A C.J.S. *Contracts* § 464. Further, "[l]oose usage by an agent of such terms as "I," "me," "mine," "we," or "ours" in referring to a business does not, standing alone, constitute a manifestation of assent to be bound personally but may corroborate other evidence." Restatement (Third) of Agency, § 6.01 cmt. d. Though the parties' rights are generally controlled by the written contract, when the contract is ambiguous, parol evidence regarding the

parties' intent is permitted to clarify the contract. *Marriott*, 722 So. 2d at 762; *Lee v. YES of Russellville, Inc.*, 784 So. 2d 1022, 1027 (Ala. 2000) (finding parol evidence admissible to show that signatory was acting as agent where contract was ambiguous as to capacity in which he signed contract).

Here, there is no dispute that the "Sold To" and "Ship To" sections of the invoices and repair orders identify A.K.G. as the customer. There is similarly no dispute that Griggs signed his individual name on the repair orders and/or invoices without any indication that he was signing in a representative capacity on behalf of A.K.G. For these reasons, the Court finds that the contract is ambiguous as to the capacity in which Griggs signed the contract and thus considers the parol evidence submitted by the parties regarding their intent. *See Marriott*, 722 So. 2d at 762 (finding contract ambiguous because the body of the contract indicated the person contracted in his individual capacity and the signature block indicated the person contracted in his representative capacity); *Lutz v. Van Heynigen Brokerage Co.*, 75 So. 284, 287-88 (Ala. 1917) (considering parol evidence where body of contract indicated person signed in representative capacity but signature block indicated person signed in individual capacity); *see also Whitmore v. Hawkins*, 217 F.3d 843 (4th Cir. 2000) (finding ambiguity in contract where introductory paragraph identified individual as party in individual capacity but individual only signed contract in representative capacity and had no individual signature line).

To support its argument that Griggs signed the contract in his individual capacity, Kenworth relies on the following evidence: (1) that Griggs signed his individual name to the contract without any indication that he was signing on behalf of A.K.G., (2) that the contract includes personal obligations and limitation of damages provisions, (3) that Griggs paid for some or all of two of the three repairs performed on the truck with his personal Visa card, and (4) that Griggs was present at Kenworth during the repairs, took pictures and videos of the truck when it was at Kenworth for repairs, and met with and communicated directly with Kenworth's assistant service manager and mechanic multiple times regarding the repairs. *See* Docs. 133-1 at 17-20 and 143 at 4.

Griggs, on the other hand, offers two affidavits to show that he signed the contract only in his representative capacity. The first affidavit—his own—states in relevant part that (1) Griggs told Kenworth that A.K.G. owned the truck and "would be the purchaser of whatever parts and repairs the truck needed"; (2) Kenworth provided price quotes and obtained pre-authorization from Newson for the work performed; and (3) Newson "handled all the aspects of the transactions with Kenworth." (Doc. 30-4, ¶¶ 6, 9). The second affidavit—Newson's, who is the managing member of A.K.G.—states in relevant part that (1) Newson had multiple conversations with both Arrow and Kenworth regarding the towing and repair of the truck, (2) Newson identified herself to Kenworth employees "as the company's

manager" and asked that she be informed on the progress of the repairs, (3) Newson received estimates and was asked by Kenworth to authorize repairs, and (4) Kenworth and Arrow told Newson that the problem had been identified and that the repairs performed would resolve the engine issue. (Doc. 30-5, ¶ 5). In addition, Griggs argues that the repair orders and/or invoices generated by Kenworth identifying A.K.G. in the "Sold To" and "Ship To" sections further indicate the intent of the parties that A.K.G., not Griggs, be bound by the contract.

As an initial matter, that Newson was involved in the transactions on behalf of A.K.G. or that Kenworth knew that A.K.G. was a customer is not dispositive of whether Griggs signed the repair orders and/or invoices in his individual capacity. *See generally B&M Homes, Inc. v. Hogan*, 376 So. 2d 667, 676 (Ala. 1979) ("It is clear in Alabama the agent for a disclosed principal can personally bind himself to the contract if he intends to add his personal guarantee."). Again, Kenworth concedes that Griggs signed the contract in his representative capacity. The question is whether Griggs also signed the contract in his individual capacity.

Based on the evidence submitted by the parties, the Court finds that there is— at the very least—a genuine dispute of material fact regarding the capacity in which Griggs signed the repair orders and/or invoices. For instance, Griggs claims that he told Kenworth that A.K.G. "would be the purchaser of whatever parts and repairs the truck needed." But Kenworth presented evidence that Griggs—not A.K.G.—

paid some or all of two of the three repair orders and/or invoices with his personal Visa card. In addition, the parties presented conflicting evidence regarding Griggs's involvement in the transactions and communications related to the repair work performed by Kenworth. Because there is a genuine dispute of fact regarding whether Griggs is an individual party to the contract, the Court cannot conclude as a matter of law that an arbitration agreement exists between the parties.

2. <u>Equitable Estoppel Exception</u>

Ordinarily, this dispute of fact would end the Court's inquiry, and the Court would proceed to trial on the issue of whether Griggs signed the contract in his individual capacity or only as an agent on behalf of A.K.G. *See Burch*, 861 F.3d at 1346; *Lee*, 784 So. 2d at 1028 (recognizing that whether the individual signed a contract in his individual capacity or as an agent on behalf of sole proprietorship was a question for the jury). But here, Kenworth argues that even if Griggs signed the repair orders and/or invoices only in his representative capacity, Griggs's claims are still subject to arbitration under an equitable estoppel exception that subjects a non-signatory's claims to arbitration. The Court agrees.

Generally, a non-signatory to an arbitration agreement cannot be forced to arbitrate his claims. *Cook's Pest Control, Inc. v. Boykin*, 807 So. 2d 524, 526 (Ala. 2001). But Alabama recognizes three exceptions to this general rule: (1) when the non-signatory is a third-party beneficiary to the contract, (2) when the non-

signatory's claims depend on the existence of the contract such that he is equitably estopped from avoiding arbitration, and (3) when a non-signatory seeks to enforce the arbitration clause against a signatory in a dispute that is intertwined with or related to the contract. *Id.* at 526-27; *see also Ex parte Tony's Towing, Inc.*, 825 So.2d 96, 97 (Ala. 2002) (limiting intertwining claims exception to use by the non-signatory in compelling arbitration of a signatory's claims). Only the second exception arguably applies in this case.

Although Griggs does not argue that he is a third-party beneficiary to the contract at issue, a non-signatory is "*treated* as a third-party beneficiary—and is equitably estopped from avoiding arbitration—when he or she asserts legal claims to enforce rights or obtain benefits *that depend on the existence of the contract that contains the arbitration agreement*." *Custom Performance, Inc. v. Dawson*, 57 So. 3d 90, 98 (Ala. 2010) (emphases in original). In other words, a plaintiff "cannot simultaneously claim the benefits of a contract" and, at the same time, seek to avoid the arbitration agreement within that contract. *Custom Performance*, 57 So. 3d at 98. Whether a non-signatory is equitably estopped from avoiding arbitration is fact-specific. *Id.* (stating that courts "must first determine whether, *under the circumstances of th[e] case*, *any of the legal claims asserted by [the plaintiff]* are dependent on the existence of the contract that contains the arbitration agreement" (emphasis in original)).

Here, the root of Griggs's claims—and the basis for Kenworth's alleged liability—is that Kenworth had a contractual duty to repair the truck's power loss and engine shut down problems and failed to repair them. Griggs admits as much in his Response to Kenworth's Motion to Compel when he acknowledges that this suit "asserts that the tractor had an electrical system defect that the defendants, at various times and despite numerous opportunities, *failed to repair*," which is "the underlying basis for negligence and gross negligence claims against the Defendant[]." (Doc. 136 at 5) (emphasis added). Specifically, Griggs alleges in his Complaint (1) that Kenworth made three failed attempts to repair the truck, describing the work performed by Kenworth pursuant to the three repair orders and/or invoices (Doc. 1, ¶¶ 16-21); (2) that Kenworth assured him "that the repairs that had been performed would end the [truck's] power loss and engine shut down problems" (Doc. 1, ¶ 20); (3) that Kenworth's failure to repair the truck was the proximate cause of the truck's loss of power and engine shut down, which led to the accident giving rise to his injuries (Doc. 1, ¶¶ 20-23); and (4) that Kenworth "fail[ed] to adequately evaluate, investigate and confirm" the cause of the truck's performance problems, "fail[ed] to effectuate and confirm all necessary repairs had been performed," and "falsely represented" to him that the truck was fully repaired. (Doc. 1, ¶¶ 63-64, 74).

Even though Griggs couches his claims against Kenworth in negligence and wantonness, his claims sound, if at all, in contract. These claims are based on

Kenworth's alleged failure to perform its contractual duty to repair the truck. But "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract." *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1211 (M.D. Ala. 2012) (quoting *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (1956)). Rather, "a negligent *failure* to perform a contract," as Griggs alleges, "is but a breach of the contract." *Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1254 (Ala. 2005). Thus, Griggs's claims are Alabama-law contract claims, not tort claims. They necessarily depend on the existence of the underlying contracts at issue and require arbitration.

But, even assuming Griggs's claims were truly negligence claims, they would still be close enough to contract claims to say that, in this particular case, he is relying on the benefits of the underlying repair orders and/or invoices to establish his claims. For example, in *Olshan Foundation Repair Co. of Mobile, LP v. Schultz*, the defendant performed repair work on the foundation of the plaintiffs' home pursuant to two contracts containing the same or a substantially similar arbitration provision. 64 So. 3d 598, 599 (Ala. 2010). The plaintiffs, a husband and wife, filed an action against the defendant, and the defendant moved to compel arbitration of their claims. *Id.* The husband, but not the wife, signed the contracts containing the arbitration provision, and the wife only asserted negligence and wantonness claims against the defendant. *Id.* at 599-601. Specifically, the wife claimed that the defendant

negligently and wantonly performed work on the foundation of her house, causing damage to her house. *Id.* at 607-09. The repair work on which she based her claims was performed pursuant to the contracts containing the arbitration provision. *Id.* at 609. The Alabama Supreme Court concluded that the wife's claims were subject to arbitration under the equitable estoppel exception because the wife had not alleged nor did the Court see how the wife could prove the existence of a duty owed by the defendant without reference to the contracts containing the arbitration provision. *Id.* at 610.

Under these circumstances, as in *Olshan*, it is difficult to see how Griggs could prove his claims without the repair orders and/or invoices at issue. Griggs's claims are predicated on and arise out of Kenworth's failure to repair the truck. And Kenworth had a duty to repair the truck only because of the repair orders and/or invoices. Accordingly, the Court concludes that Griggs's claims sufficiently depend on the existence of the repair orders and/or invoices such that he is equitably estopped from avoiding arbitration.

Finally, Griggs's claims can be compelled to arbitration only if the arbitration agreement is broad enough to encompass his claims. The Court finds that it is. The arbitration agreement specifically includes "[a]ny controversy or claim arising out of or relating to this Invoice or otherwise relating in any fashion to the purchase or sale of equipment, parts or service thereon." On its face, this provision is not limited

to the parties to the contract and encompasses Griggs's negligence claims, which arise out of or relate to the repair work performed by Kenworth as identified in the repair orders and/or invoices. Though Griggs argues that a later provision in the arbitration agreement related to jurisdictional consent—that "the parties hereto submit to the jurisdiction of all state and federal courts having venue in the county in which the dealership is located"—limits the arbitration agreement to the parties to the contract, this language *at most* creates doubt as to the scope of the arbitration agreement. And to the extent there is doubt concerning the scope of the agreement, that doubt should be resolved in favor of arbitrability. *Moses H. Cone Memorial Hosp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); *Bazemore*, 827 F.3d at 1329 (same); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 684 So. 2d 102, 107 (Ala. 1995) (same).

## B. Brinson's Claims

Unlike Griggs, it is undisputed that Brinson did not sign any of the repair orders and/or invoices containing the arbitration agreement, either in an individual or representative capacity. But Kenworth argues that Brinson's claims are nonetheless subject to arbitration under the same equitable estoppel exception applicable to Griggs's claims because Brinson, too, asserts claims to enforce rights

or obtain benefits that depend on the existence of the contract containing the arbitration agreement.

For his part, Brinson did not respond to Kenworth's renewed motion to compel arbitration or the Court's order requiring him to show cause as to why his claims should not be submitted to arbitration.[3] *See* Doc. 138. Brinson also failed to appear at the telephone conference the Court held on Kenworth's renewed motion to compel arbitration. *See* Doc. 141. Accordingly, he has waived any opposition to arbitration. *See United States v. Lawler*, 400 F. App'x 476 (11th Cir. 2010) (recognizing that failure to respond to show cause order waives arguments in opposition); *Abraham v. Greater Birmingham Humane Soc., Inc.*, No. 2:11-cv-4358, 2013 WL 1346534, at *4 (N.D. Ala. Mar. 28, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.").

Nonetheless, the same rule that compels arbitration as to Griggs also requires Brinson's claim to be arbitrated. Brinson, like Griggs, claims that Kenworth negligently failed to repair the truck, which led to the accident causing his injuries. Specifically, Brinson claims the following: (1) that Kenworth and Arrow "diagnosed the cause of the malfunction and determined what repairs and replacement of parts

---

[3] Brinson responded to Kenworth's original motion to compel arbitration, but that was several years ago before the Court's denial of that motion, Kenworth's appeal, and the Eleventh Circuit's ruling. Griggs's counsel filed a brief in opposition to Kenworth's renewed motion that addressed the arbitrability of Brinson's claims, Doc. 136, but Griggs's counsel later clarified that they do not represent Brinson and did not have authority to speak for him.

were to be made" and "controlled the time, place, manner, and nature of the tractor's inspection, diagnosis, and repair"; (2) that the "tractor's loss of power and engine shut down was a proximate result of Defendants' negligence surrounding the tractor's inspection, diagnosis, and repair"; (3) that Kenworth "acted negligently and/or wantonly in failing to adequately evaluate, investigate and confirm the cause of the subject tractor's performance problems" prior to returning the truck to Griggs; and (4) that Kenworth "acted negligently in failing to confirm all necessary repairs had been performed" prior to returning the truck to Griggs." (Doc. 50, ¶¶ 11, 12, 23, and 24).

As explained above, a claim for negligent failure to perform a contractual duty, which is essentially Brinson's claim, is nothing more than a contract claim. And even if Brinson's claims were in fact negligence claims, as with Griggs's claims, the Court is unable to see how Brinson can prove the required existence of a duty owed by Kenworth to Brinson without the repair orders and/or invoices under which Kenworth contracted to repair the truck. It is inapposite that Brinson is not a family member, spouse, or agent of A.K.G. or Griggs. What matters is that Brinson's claims "depend upon the existence of the contracts containing the arbitration provision." And because the arbitration agreement is broad enough to encompass Brinson's claims for the same reasons discussed above, Brinson's claims, like Griggs's, are subject to arbitration.

**CONCLUSION**

Based on the foregoing reasons, Kenworth's Motion to Compel Arbitration (Doc. 26), Motion to Compel Intervenor Yusef Brinson's Claims to Arbitration (Doc. 52), and Renewed Motion to Compel Plaintiff's Claims and Intervenor's Claims to Arbitration (Doc. 133) are **GRANTED.**

**DONE** and **ORDERED** this 26th day of December 2019.

_____/s/ Andrew L. Brasher_____
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE